NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1538
_____

DAVID ARTURO AGUILAR,
a/k/a DAVID ARTURO-AGUILAR,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA,

Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A200-765-683)
Immigration Judge: Amit Chugh

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2016

Before: CHAGARES, KRAUSE and ROTH, Circuit Judges

(Opinion filed: December 13, 2016)
_____

OPINION*
_____


PER CURIAM

---

\* This disposition is not an opinion of the full court pursuant to I.O.P. 5.7 does not constitute binding precedent.

David Arturo Aguilar ("Aguilar") petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will dismiss the petition for review for lack of jurisdiction.

Aguilar, a native and citizen of El Salvador, entered the United States without admission or parole. On January 6, 2012, he was convicted in the New Jersey Superior Court, Union County, of the offense of aggravated assault, in violation of N.J. Stat. Ann. § 2C:12-1(b)(1), a second degree felony, for which he was sentenced to a term of imprisonment of four (4) years.[1] The Department of Homeland Security then sought his removal from the United States pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude, and 8 U.S.C § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Aguilar appeared with counsel before an Immigration Judge and conceded that he is removable as charged.

Aguilar applied for statutory withholding of removal, 8 U.S.C. § 1231(b)(3), and for relief under the Convention Against Torture ("CAT"). He claimed that he left El Salvador due to a fear that he would be harmed by members of Mara Salvatrucha, or MS-13. He alleged that his first encounter with the gang occurred in his hometown of Sensuntepeque when he was just 11 years old. After being physically and psychologically abused for refusing to join them, Aguilar joined the gang when he was 12 years old, and began stealing, extorting money, and dealing drugs. He alleged that, in March 2004, he was attacked by gang members, apparently because he had disobeyed orders. He went into hiding for a while and then crossed the border and went to live in

---

[1] Under § 2C:12-1(b)(1), a person is guilty of aggravated assault if he "[a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury." N.J. Stat. Ann. 2C:12-1(b)(1).

2

Fresno, California with his mother. There he picked fruits and vegetables. He alleged that, eventually, he feared gang retaliation in Fresno itself and so he came to New Jersey. Aguilar's sister submitted an affidavit on his behalf, corroborating a shooting incident in El Salvador, and Aguilar submitted country conditions evidence.

On August 26, 2015, the Immigration Judge determined that Aguilar's crime was a "particularly serious crime" and thus that he was ineligible for withholding of removal under both the Immigration & Nationality Act ("INA"), see 8 U.S.C. § 1231(b)(3)(B)(ii), and the CAT, see 8 C.F.R. § 1208.16(c)(4) and (d)(2).[2] The IJ reasoned that, although Aguilar's sentence was less than five (5) years and thus was not presumptively a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(iv), the record of his conviction demonstrated that the crime was "particularly serious." Specifically, the Indictment stated that Aguilar did attempt to cause serious bodily injury to Junior Romales Perez, a minor, and/or, did recklessly cause serious bodily injury to Junior Romales Perez under circumstances manifesting extreme indifference to the value of human life. Moreover, the IJ concluded, the sentence imposed and the "egregious" facts and circumstances of the conviction also demonstrated that the crime was "particularly serious."

---

[2] In support of this eligibility determination, the agency looks to 8 U.S.C. § 1231(b)(3) of the INA, which provides that, although "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," id. at § 1231(b)(3)(A), an exception lies where the Attorney General decides that the alien has "been convicted by a final judgment of a particularly serious crime," id. at § 1231(b)(3)(B)(ii). Under the CAT, the agency looks to 8 C.F.R. § 1208.16, which provides that, although an alien shall be granted withholding of removal where "the alien is more likely than not to be tortured in the country of removal," id. at § 1208.16(c)(4), an exception lies for aliens who have been convicted of a "particularly serious crime," id. at § 1208.16(d)(2).

3

On October 26, 2015, the IJ denied Aguilar's application for deferral of removal under the CAT. After reviewing Aguilar's testimony, affidavits in support of his application, and country conditions evidence, the IJ found that Aguilar generally was credible but denied him relief on the ground that he did not meet his burden of proof to show that it was more likely than not that he would be tortured in El Salvador by or with the consent or acquiescence of a government official. The IJ acknowledged Aguilar's country conditions evidence showing the prevalence of violent gangs in El Salvador but reasoned that extensive gang violence alone did not show government involvement in what had happened to him. The IJ ordered Aguilar's removal to El Salvador.

Aguilar appealed to the Board of Immigration Appeals. Through counsel, Aguilar argued that, although under In re N-A-M-, 24 I. & N. Dec. 336 (BIA 2007), a conviction does not have to be an aggravated felony to be considered a "particularly serious crime," the IJ misapplied the factors identified in In re Frentescu, 18 I. & N. Dec. 244 (BIA 1982), for determining whether an alien whose sentence is less than five (5) years has been convicted of a "particularly serious crime." A.R. 18. Aguilar argued that, applying Frentescu to his conviction for aggravated assault, it was clear that he had not committed a "particularly serious crime" because the assault occurred only after he had attempted to separate two individuals who were fighting. He reacted angrily only after one of those individuals turned on him. A.R. 18, 21-23. Aguilar argued, in addition, that he had met his burden of proof to show that it was more likely than not that he would be tortured by gang members, and that government officials in El Salvador were accepting of MS-13's activities. A.R. 20.

4

On February 28, 2016, the Board dismissed the appeal. The Board agreed with the IJ that Aguilar's crime was a "particularly serious crime" that made him ineligible for withholding of removal under either the INA or the CAT. The Board noted the elements of § 2C:12-1(b)(1), and noted that Aguilar had conceded in his Form I-589 application that he had, in fact, caused injury to the victim. Citing Denis v. Att'y Gen. of U.S., 633 F.3d 201, 216 (3d Cir. 2011), the Board observed that crimes entailing the use or threat of force tend to be regarded as "particularly serious." In addition, the Board remarked that Aguilar's four-year sentence reflected the seriousness of his crime. Accordingly, the Board concluded that Aguilar was only eligible for deferral of removal under the CAT. The Board then found no clear error in the IJ's determination that Aguilar failed to meet his burden of proof to show that, if returned to El Salvador, he will experience treatment that would rise to the level of torture that is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).[3]

Aguilar petitioned for review, and moved in this Court for a stay of removal. The Attorney General moved to dismiss the petition for review for lack of jurisdiction. A motions panel of this Court denied Aguilar a stay of removal and referred the Attorney General's motion to dismiss to a merits panel. Briefing ensued and the petition for review is ripe for disposition. In his pro se brief, Aguilar argues that the IJ's decision to deny him relief under the CAT is not supported by substantial evidence. Based on the

---

[3] The IJ also made an alternative determination that he would not grant withholding of removal in any event because Aguilar did not show membership in a cognizable particular social group. The Board found it unnecessary to reach the merits of this alternative determination, agreeing with the IJ that Aguilar's crime was "particularly serious" and thus that he is only eligible for deferral of removal under the CAT.

5

Aguilar's failure to raise any colorable legal or constitutional contentions, the Attorney General has renewed her motion to dismiss the petition for review for lack of jurisdiction.

We will grant the Attorney General's motion and dismiss the petition for lack of jurisdiction. Generally, the INA prohibits us from reviewing a final order of removal against an alien who is removable by reason of having committed a criminal offense covered in 8 U.S.C. § 1182(a)(2). See 8 U.S.C. § 1252(a)(2)(C) (precluding jurisdiction to review final orders of removal against aliens who are removable for having been convicted of criminal offenses listed in 8 U.S.C. § 1182(a)(2)). Section 1252(a)(2)(C) generally eliminates judicial review of final orders of removal against aliens like Aguilar, who are removable by reason of having committed a crime involving moral turpitude. See Alaka v. Att'y Gen. of U.S., 456 F.3d 88, 102-03 (3d Cir 2006). Aguilar has waived and failed to exhaust any argument that his conviction is not a crime involving moral turpitude by conceding removability as charged, failing to raise this issue before the Board, and failing to raise any argument in his pro se brief on appeal concerning this issue. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005) (issue waived where not raised in brief on appeal); 8 U.S.C. § 1252(d)(1) (court may review final order of removal only where alien has exhausted all administrative remedies).

Notwithstanding this jurisdictional limitation, we retain jurisdiction to review colorable constitutional claims and questions of law that are raised in the petition for review. 8 U.S.C. § 1252(a)(2)(D). A challenge to a denial of withholding of removal based on ineligibility per se presents a reviewable question of law, Alaka, 456 F.3d at 104, but Aguilar's brief raises no reviewable issue in this regard. He has raised what amounts to a disagreement with the agency's factual determination that he failed to

6

sufficiently demonstrate that public officials in El Salvador would likely acquiesce in his torture, and this argument is unreviewable. See Pieschacon-Villegas v. Att'y Gen. of U.S., 671 F.3d 303, 309-10 (3d Cir. 2011). To the extent that Aguilar argues that the agency failed to consider evidence related to the government of El Salvador's willful blindness or acquiescence, see Petitioner's Brief at 12-20, he has failed to identify any specific evidence that the agency allegedly overlooked.

Furthermore, we see no merit to any argument that the Board misapplied its precedent to the "particularly serious crime" determination, to the extent that such an argument has been made.[4] The governing statute, 8 U.S.C. § 1231(b)(3)(B), "contains no limiting language restricting the Attorney General's discretion to label crimes as particularly serious and the long history of case-by-case determination of particularly serious crimes counsels against attempts to craft a bright-line rule." Denis, 633 F.3d at 214 (internal quotation marks, brackets, and citation omitted).[5] Where the elements of the conviction in question "suggest that the crime could potentially qualify as particularly serious," the Board does "'not prohibit the examination of other evidence or indicate that only conviction records and sentencing information'" may be used. Id. at 215 (quoting In re N-A-M-, 24 I. & N. Dec. at 344). In short, "the categorical approach, used primarily in determining removability," does not apply. Id. The Board generally examines a variety

---

[4] We held in Alaka, 456 F.3d at 104, that a crime must be an aggravated felony to be considered a "particularly serious crime." The agency did not address whether Aguilar's crime was an aggravated felony, notwithstanding our express holding in Alaka, because in In re M-H-, 26 I. & N. 26 (BIA 2012), the Board held that it would apply its contrary holding in In re N-A-M- (that an alien's crime need *not* be an aggravated felony to be considered a "particularly serious crime") to cases arising in this circuit, in order to promote national uniformity. Despite the Board's decision, we decline to address or reevaluate Alaka here because the issue was neither raised nor briefed by the parties.
[5] In Denis, we determined that the alien's conviction qualified as an aggravated felony, 633 F.3d at 213.

7

of factors and does not exclude otherwise reliable information from consideration.  Id. Moreover, the Board generally categorizes crimes against persons as "particularly serious," see In re L-S-, 22 I. & N. Dec. 645, 649 (BIA 1999).  Based on the elements of § 2C:12-1(b)(1), the Form I-589 admission, and the substantial four-year sentence, Aguilar's second-degree aggravated assault crime indisputably was "particularly serious" under Board precedent.

For the foregoing reasons, we will grant the Attorney General's motion and dismiss the petition for review for lack of jurisdiction.